**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **KHALIDA PERVEEN** | **CIVIL ACTION NO. 26-1678** |
| | **SECTION P** |
| **VS.** | **JUDGE JAMES D. CAIN, JR.** |
| **MELLISSA HARPER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Petitioner Khalida Perveen,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 12]. For reasons below, the Court should grant Petitioner's request for release from custody.

**Background**

Petitioner is a citizen of Pakistan. She entered the United States of America on September 11, 1997, "as an asylum applicant . . . ." [doc. # 1-2, p. 3]. The same day she arrived, an immigration judge ordered Petitioner removed and granted her voluntary departure. [doc. # 1-2, p. 3]. Petitioner waived her right to appeal the removal order. *Id.*

On October 6, 1998, the Government removed Petitioner to Pakistan. [doc. # 12, p. 1].

---

[1] Petitioner's "A-Number" is 075-111-239.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On an unknown date, Petitioner "re-entered the United States without inspection or parole[.]" [doc. # 12, p. 1].

ICE arrested Petitioner on October 17, 2025. [doc. #s 1-2, p. 3; 12, p. 1].

Petitioner filed this proceeding on approximately May 19, 2026. She claims that ICE has detained her for a prolonged period and is not likely to remove her in the near future. [doc. # 1, p. 6]. She "has cooperated fully with all of ICE's efforts to remove her[,]" including signing travel document request forms. [doc. # 1-2, p. 4]. She maintains that ICE is unlikely to remove her in the reasonably foreseeable future because she "is an exile from Pakistan" and Pakistan will, therefore, not issue her a travel document. *Id.* According to Petitioner, ICE unsuccessfully "tried obtaining travel documents from Pakistan and from a third country[.]" *Id.* She adds, "There are no travel plans to remove [her] in the reasonably foreseeable future." *Id.*

Respondents opposed the petition on July 24, 2026. [doc. # 12].

## **Jurisdiction**

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." *See Zadvydas*, 533 U.S. at 687. The 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). District courts may not review challenges to final orders of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, under *Zadvydas*, this Court enjoys jurisdiction over Petitioner's constitutional claim.

## Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who

is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period. To date, she has been detained 298 days (or 9 months, 25 days) following her final order of removal.

In addition, Petitioner meets her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future. For over nine months, the Government has been unable to obtain a travel document for her. Moreover, she "has cooperated fully with all of ICE's efforts to remove her[,]" including signing travel document request forms. She maintains that ICE is unlikely to remove her in the reasonably foreseeable future because she "is an exile from Pakistan" and Pakistan will, therefore, not issue her a travel document. According to Petitioner, ICE unsuccessfully "tried obtaining travel documents from Pakistan and from a third country[.]" "There are no travel plans to remove [her] in the reasonably foreseeable future."

Respondents fail to rebut Petitioner's arguments. Respondents attach the declaration of Supervisory Detention and Deportation Officer Stephen Allport, who declares in part:

> 13. On October 21, 2025, RO recorded the Petitioner's possible prior passport number from 1994 in the Petitioner's file.
>
> 14. On October 23, 2025, the assigned DO emailed the previous case officer to obtain the Petitioner's file.
>
> 15. On November 01, 2025, ERO sent Form I-217, Request for Information for Travel Documents or Passport, along with a request for an updated photo, to be served to the Petitioner at South Louisiana ICE Processing Center.
>
> 16. On November 4, 2025, ERO emailed Petitioner's travel document request package to the Detention and Deportation Officer (DDO) point of contact for review and approval. Additionally, ERO documented that Petitioner's travel document request was pending.
>
> 17. On November 11, 2025, ERO documented that the travel document request is pending being mailed and that money orders were currently not being issued.

18. On December 18, 2025, ERO documented that the Petitioner's money order was still pending issuance and noted that the travel document request package and money order would be sent to the Pakistan consulate once the money order was issued.

19. On December 23, 2025, ERO documented that Petitioner's money order for the travel document request was still pending.

20. On December 29, 2025, Petitioner provided ERO a copy of her expired passport. That same day, Petitioner was served with the 90-day Post Order Custody Determination paperwork in which was signed by the Petitioner.

21. On January 7, 2026, ERO documented that Petitioner's money order for the travel document request was still pending.

22. On January 12, 2026, ERO received the Petitioner's money order for the Petitioner's travel document request.

23. On January 14, 2026, ERO mailed Petitioner's money order and travel document request to the Consulate of Pakistan.

24. On March 11, 2026, ERO followed up with the DDO point of contact to request an update on the Petitioner's travel document request.

25. On March 12, 2026, ERO received correspondence from the DDO point of contact that Petitioner's travel document request is still pending.

26. On March 23, 2026, ERO completed the 90-day Post Order Custody Review.

27. On March 25, 2026, ERO sent the Decision to Continue Detention to South Louisiana ICE Processing Center to be served to Petitioner.

28. On May 6, 2026, ERO followed up with the DDO point of contact to request an update on the Petitioner's travel document request.

29. On May 7, 2026, ERO received correspondence from the DDO point of contact that Petitioner's travel document request is pending verification.

30. On June 25, 2026, ERO followed up with the DDO point of contact to request an update on the Petitioner's travel document request.

31. On June 29, 2026, ERO received correspondence from the DDO point of contact that Petitioner's travel document request is still pending.

[32]. As of July 22, 2026, the Petitioner's travel document request remains pending with the Consulate of Pakistan. Although no removal plans have been

> arranged at this time, ERO New Orleans continues to follow up with its Headquarters regarding the pending travel document request and will continue to work towards Petitioner's removal from the United States.

[doc. # 12-1].

That Respondents have not obtained a travel document following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future. Respondents essentially present (i) internal agency communications and paperwork for approximately three months, culminating in the procurement of a money order, (ii) a travel document request pending with Pakistan for approximately seven months to date, and (iii) no plans arranged for Petitioner's removal. The Government does not provide any indication that Pakistan will issue a travel document or *when* Pakistan might issue a travel document. The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[4] "A theoretical possibility of eventually being removed does not satisfy the

[4] *See Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his

Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

Respondents even suggest that obtaining travel documents is beyond their control. They state specifically that the "processes for obtaining a temporary travel document from another country are complex, multi-faceted, and include considerations of diplomacy that are beyond the control of ICE." [doc. # 12, p. 4]. As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[5]

**Conclusion**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Khalida Perveen's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of South Louisiana ICE Processing Center, shall (A) immediately release Petitioner from custody without bond, under

---

initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[5] The undersigned finds no need to address any claim or request for relief not addressed herein.

reasonable conditions of supervision if necessary and (B) if Petitioner has family and emergency contacts on record, notify them of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER RECOMMENDED** Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 11th day of August, 2026.

Kayla D. McClusky
United States Magistrate Judge